SEYFARTH SHAW LLP
Andrew R. Escobar, OSB No. 106671
Email: aescobar@seyfarth.com
999 Third Avenue, Suite 4700
Seattle, Washington 98104-4041
Telephone: (206) 946-4910
Facsimile: (206) 946-4901

Ian H. Morrison (admitted *pro hac vice*)
imorrison@seyfarth.com
Shelley R. Hebert (admitted *pro hac vice*)
shebert@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, IL 60606
Telephone: 312-460-5000
Facsimile: 312-460-7000

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

CHRISTINE MCCOURT,

Plaintiff,

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

Defendant.

Case No. 3:26-cv-00785-SB

**DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS


I. FACTS RELEVANT TO THIS MOTION .......... 2

A. The NEA's ERISA-governed plan .......... 2

B. Plaintiff obtained dependent life insurance coverage under the NEA's ERISA-governed plan. .......... 5

C. Prudential denied Plaintiff's claim for dependent life insurance benefits under the Plan. .......... 5

II. ARGUMENT .......... 6

A. Standard of Review .......... 6

B. The Court should dismiss Plaintiff's state law claims because ERISA preempts these claims. .......... 10

1. The benefits at issue are subject to ERISA because they are provided through an employee welfare benefit plan sponsored by an employee organization. .......... 10

2. The Plan is not exempt from ERISA coverage. .......... 13

3. Plaintiff's state law claims are preempted by ERISA. .......... 15

4. Dismissal at the outset accords with the important public policies behind ERISA. .......... 18

C. The Court should dismiss Plaintiff's state law claims with prejudice. .......... 20

III. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
458 F.3d 955 (9th Cir. 2006) ....................19

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)....................17

*ASARCO, LLC v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014) ....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Bast v. Prudential Ins. Co. of Am.*,
150 F.3d 1003 (9th Cir. 1998) ....................17, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Boomsma v. Prudential Ins. Co. of Am.*,
Case No. 5:24-cv-06305-CH (E.D. Pa. June 27, 2025)....................13

*Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*,
410 F.3d 1173 (9th Cir. 2005) ....................19

*Brighton Park Neighborhood Council v. McMahon*,
No. CV 25-4523 (SLS), 2026 WL 1707623 (D.D.C. June 12, 2026)....................2

*Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*,
103 F.4th 597 (9th Cir. 2024) ....................17

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ....................20

*Chubby Gorilla, Inc. v. FH Packaging LLC*,
No. 8:24-CV-00340-JVS (KES), 2024 WL 3914661 (C.D. Cal. July 1, 2024) ....................2

*Damiano v. Prudential Ins. Co. of Am.*,
No. 25-CV-09628-NC, 2026 WL 539619 (N.D. Cal. Feb. 26, 2026) ....................8, 18

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ....................2, 4, 11, 13

*Durham v. Prudential Ins. Co. of Am.*,
236 F. Supp. 3d 1140 (C.D. Cal. 2017) ....................7

*Elliot v. Fortis Benefits Ins. Co.*,
337 F.3d 1138 (9th Cir. 2003) ....................18

*Employees' Ret. Plan of Nat'l Educ. Ass'n v. Clark Cnty. Educ. Ass'n*,
664 F. Supp. 3d 24 (D.D.C. 2023) ....................13

*Fed. Trade Comm'n v. Grand Canyon Educ., Inc.*,
745 F. Supp. 3d 803 (D. Ariz. 2024) ....................2, 9

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ....................6

*Fiscu v. UKG Inc.*,
No. 3:23-CV-01240-AN, 2024 WL 2153537 (D. Or. May 13, 2024) ....................14, 18

*Fort Halifax Packing Co. v. Coyne*,
482 U.S. 1 (1987) ....................16, 18

*Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.*,
463 U.S. 1 (1983) ....................15

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016) ....................19

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
494 F.3d 1203 (9th Cir. 2007) ....................3

*Heintzman v. Lincoln Fin. Grp.*,
No. CV-25-01755-PHX-SHD, 2026 WL 621428 (D. Ariz. Mar. 5, 2026) ....................8, 18

*Heldt v. Guardian Life Ins. Co. of Am.*,
No. 16-CV-00885-BAS-NLS, 2017 WL 980181 (S.D. Cal. Mar. 13, 2017) ....................7

*Hower v. Pacificare of California*,
36 F. App'x 250 (9th Cir. 2002) ....................7, 17

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022) ....................19

*Ingersoll-Rand Co. v. McClendon*,
498 U.S. 133 (1990) ....................17

*Kanne v. Connecticut Gen. Life Ins. Co.*,
867 F.2d 489 (9th Cir. 1988) ....................7, 15

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ........................................ 9

*Mackey v. Lanier Collections Agency & Serv., Inc.*,
486 U.S. 825 (1988) ........................................ 16

*McIntosh v. Prudential Ins. Co.*,
No. 16-0523-WS-C, 2016 WL 6832639 (S.D. Ala. 2016) ........................................ 13

*Metro. Life Ins, Co. v. Mass.*,
471 U.S. 724 (1985) ........................................ 16

*Metro. Life Ins. Co. v. Taylor*,
481 U.S. 58 (1987) ........................................ 16

*Meyer v. United Healthcare, Ins. Co.*,
840 F. App'x 174 (9th Cir. 2021) ........................................ 10, 17, 18

*Nat'l Educ. Ass'n v. DeVos*,
345 F. Supp. 3d 1127 (N.D. Cal. 2018) ........................................ 2

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998), as amended (July 28, 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) ........................................ 9

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) ........................................ 16

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ........................................ 20

*Salomaa v. Honda Long Term Disability Plan*,
642 F.3d 666 (9th Cir. 2011) ........................................ 19

*Sgro v. Danone Waters of N. Am., Inc.*,
532 F.3d 940 (9th Cir. 2008) ........................................ 8, 14

*Shaw v. Delta Airlines, Inc.*,
463 U.S. 85 (1983) ........................................ 16

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ........................................ 6

*Stewart v. Nat'l Educ. Ass'n*,
471 F.3d 169 (D.C. Cir. 2006) ........................................ 13

*Stinson v. Prudential Ins. Co. of Am.*,
857 F. Supp. 2d 681 (S.D. Ohio 2012) ....................13

*Stuart v. UNUM Life Ins. Co. of Am.*,
217 F.3d 1145 (9th Cir. 2000) ....................8, 14, 15

*Thomas v. Oregon Fruit Prods. Co.*,
228 F.3d 991 (9th Cir. 2000) ....................19

*Tingey v. Pixley-Richards W., Inc.*,
953 F.2d 1124 (9th Cir. 1992) ....................18

*Torres v. San Francisco Hum. Servs. Agency*,
No. 19-17583, 2021 WL 5985560 (9th Cir. Dec. 17, 2021)....................20

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................3, 7, 8

*Western Min. Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) ....................6, 11

*White v. Chevron Corp.*,
No. 16-CV-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), aff'd,
752 F. App'x 453 (9th Cir. 2018)....................2, 9

*Wilson v. Provident Life & Acc. Ins. Co.*,
101 F. Supp. 3d 1038 (W.D. Wash. 2015)....................13

*Wise v. Verizon Commc'ns, Inc.*,
600 F.3d 1180 (9th Cir. 2010) ....................7, 17

**Statutes**

29 U.S.C. § 152(5) ....................12

29 U.S.C. § 1002(1) ....................10, 13

29 U.S.C. § 1002(4) ....................10, 11, 12, 13

29 U.S.C. § 1002(16)(B)....................10

29 U.S.C. § 1003(a)(1)-(3)....................11

29 U.S.C. § 1024(b)(4) ....................8

29 U.S.C. §§ 1031-32 ....................19

29 U.S.C. §§ 1101-14 ....................19

29 U.S.C. § 1132(g)(1) ....................19

29 U.S.C. § 1144(a) ....................15, 16

29 U.S.C. § 1144(c)(1)....................16

Arizona Consumer Fraud Act ....................18

Employee Retirement Income Security Act .................... *passim*

ERISA ....................8

IRC § 501(c)(9)....................4, 12

Montana's Unfair Trade Practices Act ....................17, 18

National Labor Relations Act ....................12

**Other Authorities**

26 C.F.R. § 1.501(c)(9)-2....................12

29 C.F.R. § 2510.3-1(j)....................14, 15

Federal Rule of Civil Procedure 12(b)(6) ....................1, 3, 6, 7

https://www.irs.gov/charities-non-profits/other-non-profits/voluntary-employees-beneficiary-association-501c9 *(*last visited July 15, 2026*)*....................4

https://www.nea.org/about-nea ....................2

https://www.nea.org/our-members (last visited June 3, 2026) ....................2

https://www.neamb.com/pages/mit-protecting-members (last visited July 15, 2026.) ....................4

Local Rule 7-1(a) ....................1

LR 7-1 ....................1

National Education Association, Form LM-2 Labor Organization Annual Report, available at https://olmsapps.dol.gov/query/orgReport.do?rptId=900357&rptForm=LM2Form (last visited July 15, 2026)....................2

## LR 7-1 CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7-1(a), counsel for Defendant states that the parties made a good faith effort to resolve the dispute and have been unable to do so. Counsel for Defendant certifies that he discussed each defense that is the subject of this Motion with counsel for Plaintiff.

## PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant, The Prudential Insurance Company of America ("Prudential" or "Defendant"), by and through its attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the First, Second, and Third Causes of Action in Plaintiff's First Amended Complaint ("FAC") and submits the following Memorandum in support.

Plaintiff's FAC seeks to strip away federal statutory protections enjoyed by 380,000 non-parties. It also seeks to unilaterally re-write and defeat the purpose of the plan documents which enable these individuals to secure low-cost insurance coverage, and which enable a non-party labor union to follow the clear, uniform directions of Congress, instead of overlapping and conflicting obligations imposed by fifty states.

The FAC asserts a claim for benefits under the Employee Retirement Income Security Act ("ERISA"), in the alternative. But Plaintiff continues to insist that her claim for life insurance benefits is not governed by ERISA and brings breach of contract, bad faith, and negligence claims under state law, maintaining that this is a mundane insurance dispute. Plaintiff is wrong. ERISA preempts all state law claims arising from or related to ERISA-governed employee benefit plans. Plaintiff cannot plead state law claims because the insurance coverage she obtained through a plan sponsored by the National Education Association ("NEA"), indisputably an "employee organization" under ERISA, is offered through an ERISA-governed employee welfare benefit plan. Any contrary determination would have devastating consequences for the NEA and the nearly half-a-million people covered under the NEA's plan.

As explained below, ERISA indisputably governs this case. Thus, Plaintiff's state law claims must be dismissed as preempted by ERISA.

## MEMORANDUM OF LAW IN SUPPORT

### I. FACTS RELEVANT TO THIS MOTION

#### A. The NEA's ERISA-governed plan.

The NEA is a professional organization consisting of over 3 million members, including teachers and other education professionals.[1] The NEA is also registered as a "labor organization," *i.e.*, a labor union, with the United States Department of Labor.[2]

[1] *See* https://www.nea.org/about-nea and https://www.nea.org/our-members (last visited June 3, 2026); *see also Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 995 (9th Cir. 2010) ("The NEA is a public employee labor union, consisting of over 3.2 million teachers, administrators, and other educators in public schools throughout the United States."); *Nat'l Educ. Ass'n v. DeVos,* 345 F. Supp. 3d 1127, 1136 (N.D. Cal. 2018) ("The National Education Association is the largest professional-employee organization in the country and is committed to advancing the cause of public education. The NEA has over three million members, who work at every level of education from preschool to university graduate programs."); *Brighton Park Neighborhood Council v. McMahon*, No. CV 25-4523 (SLS), 2026 WL 1707623, at *4 (D.D.C. June 12, 2026) ("National Education Association (NEA) is a non-profit, professional association of educators that represents approximately three million members who work at every level of education—from pre-school to university graduate programs.").

[2] *See* National Education Association, Form LM-2 Labor Organization Annual Report, available at https://olmsapps.dol.gov/query/orgReport.do?rptId=900357&rptForm=LM2Form (last visited July 15, 2026), attached as Exhibit E. NEA's annual report is not attached as an exhibit due to its length (approx. 362 printed pages), but Prudential will provide a copy to the Court at its request. The Court may take judicial notice of this document, and of all other documents referenced in this brief that were filed with federal agencies. *See, e.g., Fed. Trade Comm'n v. Grand Canyon Educ., Inc.*, 745 F. Supp. 3d 803, 829 (D. Ariz. 2024) (court may take judicial notice of matters of public record, including that IRS classified defendant as a § 501(c)(3) public charity in 2015); *Chubby Gorilla, Inc. v. FH Packaging LLC,* No. 8:24-CV-00340-JVS (KES), 2024 WL 3914661, at *4 n.1 (C.D. Cal. July 1, 2024) (court may "take judicial notice of public records on file with federal agencies ...."); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017) (taking judicial notice of retirement plan documents, including IRS Form 5500 filings for the plan), aff'd, 752 F. App'x 453 (9th Cir. 2018).

In order to facilitate the provision of low-cost insurance options to its members, the NEA sponsors the NEA Members Insurance Plan ("the Plan"). *See* Declaration of James Testerman ("Tersterman Decl."), attached as Exhibit A, authenticating Exhibit A.1, the NEA Members Insurance Plan, Amended and Restated Effective January 1, 2015 (the "Wrap Plan"); Ex. A.1, Wrap Plan at §§ 1.1, 1.17.[3] The Wrap Plan makes it clear that "[t]his Plan shall be governed by, construed and administered in accordance with ERISA." Ex. A.1, Wrap Plan at § 15.1. The Plan's summary plan description ("SPD"), similarly, references ERISA thirteen times, including by explaining, at length, the rights that ERISA affords to plan participants (*i.e.*, insureds). *See generally* Testerman Decl. Ex. A.2. And, accordingly, each year the Plan files Form 5500 – the annual disclosure form required of ERISA plans – with the Department of Labor. (*See* 2024 Form 5500 for the NEA Members Insurance Plan, attached as Exhibit D.)

In establishing the Plan, the NEA established the NEA Members Insurance Trust ("the Trust"). *See* Testerman Decl. Ex. A.1 at § 1.6. Today, the Trust's insurance programs protect over

---

[3] In resolving a motion to dismiss, the Court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" without converting the motion into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003). Plaintiff attached her insurance booklet-certificate as an exhibit to her Complaint, and it references both the NEA Members Insurance Plan and the Group Contract. *See, e.g.*, ECF No. 20-1 at 6-7, 27-28, 32. In fact, the booklet-certificate states that all benefits "are subject in every way to the entire Group Contract which includes the Group Insurance Certificate." *Id.* at 6. Accordingly, the Court can consider these documents. *See infra* Part II.A. Should the Court decide that these materials are outside the pleadings, Prudential requests the Court convert this Motion into a motion for summary judgment limited to the issue of ERISA preemption. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007) (recognizing that Rule 12(b)(6) gives courts discretion to accept and consider extrinsic materials offered in connection with a motion to dismiss, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings).

380,000 NEA member families.[4] Since 1978, the Trust has been a recognized IRC § 501(c)(9) organization. *See* Testerman Decl. Exhibits G and H; *supra* fn. 2. This means that the Trust is, legally, "[a] voluntary employees' beneficiary association" that has been "organized to pay life, sick, accident, or similar benefits to members or their dependents, or designated beneficiaries."[5] As an IRC § 501(c)(9) organization, the Trust must restrict its offerings to "employees who have an employment-related common bond." *Id.* Given this structure, the Trust represents itself to the Department of Labor as "an employee organization" within the meaning of ERISA.

The Trust does not self-insure the benefits it provides. Instead, effective September 1, 1992, the Trust entered into a Group Contract with Prudential, for Prudential to provide group insurance coverage to Plan participants. *See* Declaration of Beth Tang Sing ("Tang Sing Decl."), attached as Exhibit B, authenticating Exhibit B.1, Group Insurance Contract No. G-20400-2 (the "Group Contract"). This coverage included group term life insurance coverage. The booklet-certificate, which sets forth the terms and conditions of this group coverage through the Plan, is attached as Exhibit 1 to Plaintiff's Complaint (the "booklet-certificate"). *See* ECF No. 20-1.

The booklet-certificate, consistent with the Wrap Plan, reiterates that the NEA sponsors the Plan and established the Trust, and that the NEA administers the Plan. *See* ECF No. 20-1 at 27-28. The booklet-certificate further describes the Plan as "an employee welfare benefit plan," and describes each participant's rights and protections under ERISA. *Id.* at 28-30. Specifically, the booklet-certificate states that: "The National Education Association (NEA) sponsors a group

[4] *See* https://www.neamb.com/pages/mit-protecting-members (last visited July 15, 2026.). *See also Daniels-Hall*, 629 F.3d at 995 ("The NEA provides numerous benefits to its members, including insurance coverage, discounts, and other services.").

[5] *See* https://www.irs.gov/charities-non-profits/other-non-profits/voluntary-employees-beneficiary-association-501c9 (last visited July 15, 2026); Exhibit F.

insurance plan for its members called the 'NEA Members Insurance Plan' ('the Plan') . . . . As a participant in the Plan, you are entitled to certain rights and protections under ERISA." *Id.* at 27.

### B. Plaintiff obtained dependent life insurance coverage under the NEA's ERISA-governed plan.

Plaintiff Christine McCourt ("Plaintiff") was a member of the NEA. (FAC ¶ 6.) Effective August 21, 2009, she obtained term life insurance coverage in the amount of $250,000 under the Plan for herself and the same amount of "dependent coverage" for her spouse at the time, Craig McCourt. (FAC ¶¶ 6, 11.) Plaintiff alleges that she "was eligible to obtain the coverage pursuant to her membership in the National Education Association," not by virtue of working for the NEA. (FAC ¶ 6, 8.) Prudential insures the life insurance coverage at issue through its group contract with the Trust. (FAC ¶ 4; Tang Sing Decl. Ex. B.1.)

On February 10, 2021, Plaintiff and Craig McCourt (the "decedent") divorced. (FAC ¶ 12.) Plaintiff paid premiums for the decedent's coverage from when she purchased the coverage in 2009 through the decedent's death on September 27, 2025. (FAC ¶¶ 11-13.)

### C. Prudential denied Plaintiff's claim for dependent life insurance benefits under the Plan.

After the decedent's death, Plaintiff filed a claim for life insurance benefits under the Plan. (FAC ¶ 13.) On December 31, 2025, Prudential denied her claim because, after the divorce, the decedent was no longer eligible to be covered as a dependent under the Plan. (FAC ¶ 14; *see also* Prudential's denial letter, attached as Exhibit 2 to the FAC, ECF No. 20-2.) Plaintiff alleges that Prudential's denial was improper because she paid premiums for four years after her divorce and, under applicable Oregon law, the coverage was incontestable. (FAC ¶¶ 15, 18.) Plaintiff also alleges that Prudential relied on incorrect policy language in denying her claim. (FAC ¶¶ 16-17.)

On April 21, 2026, Plaintiff filed her Complaint, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, and negligence per se. (ECF No. 1.) On April 23,

2026, Plaintiff's counsel submitted a copy of the Complaint as Plaintiff's administrative appeal to Prudential. *See* Declaration of Nicole Lawrence ("Lawrence Decl."), attached as Exhibit C, authenticating Exhibit C.1 (Plaintiff's Letter dated April 23, 2026). On May 29, 2026, Prudential denied Plaintiff's appeal. *See* Lawrence Decl., Ex. C.2 (Prudential Appeal Decision Letter dated May 29, 2026). On June 29, 2026, Prudential moved to dismiss Plaintiff's original Complaint. (ECF Nos. 16-17.) On July 13, 2026, Plaintiff filed her FAC, continuing to allege state law claims but adding an ERISA claim for benefits in the alternative. (ECF No. 20.) The allegations in the FAC are identical to her original Complaint, except Plaintiff has added three paragraphs alleging that the NEA is not an employee organization as defined in ERISA. (*Id.* at ¶¶ 8-10.)

## II. ARGUMENT

### A. Standard of Review

Motions to dismiss brought under Fed. R. Civ. P. 12(b)(6) are an "important mechanism for weeding out meritless claims" in ERISA cases. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). To survive a Fed. R. Civ. P. 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While courts must accept facts alleged in the complaint, they need not accept legal conclusions. *Western Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). In fact, conclusory allegations or legal conclusions masquerading as factual allegations will not defeat a motion to dismiss. *Id.*; *see also Iqbal*, 556 U.S. at 678-79 (noting that "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions."). The Court also need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*

*v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

ERISA preemption generally is an affirmative defense. *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 n.4 (9th Cir. 1988). Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper if the defendant can establish the affirmative defense through either the facts alleged by the plaintiff or facts that are subject to judicial notice. *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Once a defendant asserting ERISA preemption establishes that the plan qualifies as an "employee benefit plan," the burden shifts to the plaintiff to show that the plan is exempt from ERISA coverage. *See Durham v. Prudential Ins. Co. of Am.*, 236 F. Supp. 3d 1140, 1152 (C.D. Cal. 2017) (discussing burden of proof on motion to dismiss based on ERISA preemption; granting motion to dismiss based on ERISA preemption).

Consistent with this principle, courts in the Ninth Circuit routinely rule on ERISA preemption at the motion-to-dismiss stage. *See, e.g., Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190-91 (9th Cir. 2010) (affirming district court's dismissal under Rule 12(b)(6) of state law claim as preempted by ERISA); *Hower v. Pacificare of California*, 36 F. App'x 250, 251 (9th Cir. 2002) (affirming dismissal of state law claims based on ERISA preemption); *Heldt v. Guardian Life Ins. Co. of Am.*, No. 16-CV-00885-BAS-NLS, 2017 WL 980181, at *9 (S.D. Cal. Mar. 13, 2017) (granting 12(b)(6) motion to dismiss state law breach of contract claim as preempted by ERISA, holding plaintiff's claim failed to state a claim upon which relief could be granted).

In deciding a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively

to the document or the document forms the basis of the plaintiff's claim." *Id.* (recognizing that defendant "may offer such a document, and the district court may treat such a document as part of the complaint"). Fundamentally, courts are permitted to consider ERISA plan documents, even on a motion to dismiss, when the plaintiff refers to them in the complaint. *See Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 n.1 (9th Cir. 2008); *see also Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1153-55 (9th Cir. 2000) (holding district court erred in excluding, in connection with a motion to dismiss, group insurance policy and declaration by employer's representative supporting that ERISA governed plan).

Here, the Court may consider the Wrap Plan and SPD (Exhibits A.1-A.2), the Group Contract between Prudential and the Trust (Exhibit B.1), Plaintiff's appeal letter (Exhibit C.1), and Prudential's appeal decision letter (Exhibit C.2) because Plaintiff refers to the terms of the Plan throughout her Complaint, she attaches the booklet-certificate as an exhibit to her Complaint (which is expressly subject to the Plan and the Group Contract, *see* note 3, *supra*), and these documents form the basis of her claims.[6] *See, e.g.*, *Heintzman v. Lincoln Fin. Grp.*, No. CV-25-01755-PHX-SHD, 2026 WL 621428, at *1 n.1 (D. Ariz. Mar. 5, 2026) (considering plan document attached to motion to dismiss based on ERISA preemption, where complaint referenced the plan and plaintiff's participation in it; finding that the plan documents were incorporated by reference into the complaint); *Damiano v. Prudential Ins. Co. of Am.*, No. 25-CV-09628-NC, 2026 WL 539619, at *2 (N.D. Cal. Feb. 26, 2026) (incorporating by reference group insurance contract and life insurance booklet-certificate attached to defendant's motion to dismiss).

[6] One of Plaintiff's rights under ERISA is the right to obtain from the Plan Administrator copies of numerous documents, including the governing plan document, the summary plan description, any trust agreement, and the Form 5500. 29 U.S.C. § 1024(b)(4). If she had questions about the structure and governance of the Plan, Plaintiff could have sought these documents before filing suit. This right is described in ECF No. 20-1 at 29.

Additionally, the Wrap Plan, SPD, Group Contract, and appeal correspondence have been authenticated by the NEA and Prudential and they are documents on which Plaintiff's claim depends. *See* Testerman Decl., Tang Sing Decl. and Lawrence Decl.; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (recognizing that the "incorporation by reference" doctrine extends to "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint"), citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), as amended (July 28, 1998) ("a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies"; holding district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–682 (9th Cir. 2006).

Finally, as detailed in Defendant's Request for Judicial Notice, the Court may take judicial notice of the Form 5500 filed by the Plan (Ex. D) and the IRS determination letters to the Trust (Testerman Decl. Exs. G and H.) *See White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017) (taking judicial notice of employee savings investment plan documents, including IRS Form 5500 filings for the plan), aff'd, 752 F. App'x 453 (9th Cir. 2018); *Fed. Trade Comm'n v. Grand Canyon Educ., Inc.*, 745 F. Supp. 3d 803, 829 (D. Ariz. 2024) (court may take judicial notice of matters of public record, including fact that IRS classified defendant as a § 501(c)(3) public charity in 2015).

**B. The Court should dismiss Plaintiff's state law claims because ERISA preempts these claims.**

1. The benefits at issue are subject to ERISA because they are provided through an employee welfare benefit plan sponsored by an employee organization.

ERISA governs insurance coverage when it is offered through an employee benefit plan. An employee benefit plan is one providing covered benefits (including life insurance) and that is "established or maintained by an employer or by an employee organization." 29 U.S.C. § 1002(1).[7] An "employee organization" is "any labor union or any organization of any kind . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan." 29 U.S.C. § 1002(4). The entity that "establish(es) or maintain(s)" is the "plan sponsor." 29 U.S.C. § 1002(16)(B).

The NEA indisputably is an "employee organization" within ERISA's meaning, as it is a "labor union." 29 U.S.C. § 1002(4). Indeed, as discussed above, the NEA is registered as a labor union with the DOL. *See supra* at Part I.A. And, as the Wrap Plan confirms, the NEA is the Plan's "sponsor." *See* Testerman Decl. Ex. A.1 at § 1.1, 1.17. Thus, the NEA is the entity which "established or maintained" the Plan. 29 U.S.C. § 1002(16)(B). Accordingly, the Plan is ERISA-governed. *See* 29 U.S.C. § 1002(1) (an "employee welfare plan" covered by ERISA includes a plan providing one or more of the specified benefits that is "established or maintained" by "an employee organization," such as a "labor union"). *See Meyer v. United Healthcare, Ins. Co.*, 840 F. App'x 174, 175–76 (9th Cir. 2021) (finding no reasonable dispute medical insurance was

[7] Plaintiff alleges that the Plan is not governed by ERISA because she never worked for the NEA, so it was not sponsored by her employer. (FAC ¶ 8.)

provided pursuant to ERISA plan, where plaintiff's previous employer "engaged [insurer] to provide health insurance for its employees" through group insurance policy).

Based on the Complaint, Plaintiff disagrees. (FAC ¶¶ 6-10.) Plaintiff alleges: "The NEA is not an employee association. The coverage was purchased by the Plaintiff in her individual capacity, and her coverage is not part of an employee welfare benefit plan regulated be ERISA." (FAC ¶ 6.) Plaintiff is mistaken. The Wrap Plan and SPD confirm that it is sponsored, and thus "established" and "maintained," by the NEA, which is a labor union; ERISA's definition of "employee organization" includes labor unions. *See* 29 U.S.C. § 1002(4). The Ninth Circuit has recognized as much. *See Daniels-Hall v. National Education Ass'n*, 629 F.3d 992, 997, 999, 1002, 1005 (9th Cir. 2010) (recognizing that NEA is an "employee organization" under ERISA and that ERISA applies to "any employee benefit plan if it is established or maintained ... by any employer ... or ... by any employee organization ... or by both"), quoting 29 U.S.C. § 1003(a)(1)-(3).[8]

Plaintiff does not dispute that the NEA is a labor union but alleges that the NEA is not an "employee organization" under ERISA because membership in the NEA is not limited to employees (e.g. students can enroll for coverage under the Plan) and the Plan is not established pursuant to a collective bargaining agreement. (*Id.* ¶¶ 9-10.) The Court need not accept these conclusory allegations and legal conclusions as true. *Western Min. Council*, 643 F.2d at 624. To the contrary, the Court should reject them because they are plainly incorrect.

[8] *Daniels-Hall* addressed the question of whether certain annuities promoted by the NEA in conjunction with the investment firm that provided the annuities were employee pension benefit plans governed by ERISA, which turned on who sponsored them. *Daniels-Hall* held that 403(b) plans sponsored by public school districts were government plans exempt from ERISA, and the annuities promoted by the NEA were not sponsored by the NEA and therefore were not "employee pension benefit plans" subject to ERISA. 629 F.3d at 1002-1005. Neither of these issues is present here.

First, ERISA's definition of "employee organization" expressly includes "any labor union" – not labor unions consisting ***only*** of employees – and it uses the phrase "in which employees participate" – not "in which ***only*** employees participate." 29 U.S.C. § 1002(4).[9] Second, for nearly 50 years, the Trust has been legally recognized as a "voluntary employees' beneficiary association" under the Internal Revenue Code § 501(c)(9). *See* Testerman Decl. Exs. G and H; Ex. F (describing VEBA membership as consisting of "individuals who are employees who have an employment-related common bond. This common bond may be a common employer (or affiliated employers), coverage under one or more collective bargaining agreements, membership in a labor union, or membership in one or more locals of a national or international labor union."). ERISA's definition of "employee organization" includes employees' beneficiary associations, *i.e.*, VEBAs, meaning the Trust independently meets the definition. Third, IRS regulations covering VEBAs, like the Trust, make clear that not all participants need be employees. 26 C.F.R. § 1.501(c)(9)-2. In fact, up to 10 percent of members can be non-employees before additional scrutiny is warranted. *Id.* Indeed, the IRS has ruled that the Trust qualifies as a VEBA despite the participation of students and certain other non-employees, as well as persons who are not members of the NEA but are members of a state or local affiliate. See Testerman Decl. Ex. H (noting that the number of student members and certain other groups of individuals is "very slight" and that the NEA meets the "90 percent employee requirements of section I.501(c)(9)-2(a)(1) of the Income Tax Regulations"; finding that "[e]xemption will not be denied merely because the membership of an association

---

[9] ERISA's definition of "employee organization" mirrors the National Labor Relations Act definition of "labor organization." *See* 29 U.S.C. § 152(5) ("The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.").

includes some individuals who are not employees … provided that such individuals share an employment-related bond with the employee members.”). Finally, nothing in ERISA requires that an “employee welfare benefit plan” sponsored by a labor union be established pursuant to a collective bargaining agreement. *See* 29 U.S.C. §§ 1002(1), 1002(4).

Moreover, courts, including the Ninth Circuit, have repeatedly recognized that the NEA qualifies as an employee organization under ERISA notwithstanding its membership structure. *See Daniels-Hall*, 629 F.3d at 997, 1002, 1005; *McIntosh v. Prudential Ins. Co.*, No. 16-0523-WS-C, 2016 WL 6832639, at *3 n.3 (S.D. Ala. 2016) (“Plainly, the National Education Association (‘NEA’) is an ‘employee organization’ within the ERISA definition of the term”); *Stinson v. Prudential Ins. Co. of Am.*, 857 F. Supp. 2d 681, 688 (S.D. Ohio 2012) (the “NEA is an ‘employee organization’ because it is a labor union that exists in part to deal with employers concerning an employee benefit plan”). *See also Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (the NEA’s group life and accident insurance plan is governed by ERISA); *Employees' Ret. Plan of Nat'l Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 664 F. Supp. 3d 24, 29 (D.D.C. 2023) (describing the NEA as a “national labor union that represents teachers and other public-school employees”). *See also Boomsma v. Prudential Ins. Co. of Am.*, Case No. 5:24-cv-06305-CH (E.D. Pa. June 27, 2025) (holding that ERISA governed the NEA’s group life insurance coverage because the NEA is an “employee organization” under ERISA and that it sponsored the Plan), attached as Exhibit I; *Wilson v. Provident Life & Acc. Ins. Co.*, 101 F. Supp. 3d 1038, 1040 (W.D. Wash. 2015) (NEA affiliate was “employee organization”).

2. <u>The Plan is not exempt from ERISA coverage.</u>

Plaintiff alleges that she paid the premiums for the decedent’s life insurance coverage (FAC ¶¶ 11-12, 15), and that the “insurance policy was obtained by the Plaintiff as an individual, with no connection to her employment or any ERISA employee benefit plan.” *Id.* ¶ 7. This is yet another

incorrect legal conclusion entitled to no deference. As already shown, the Wrap Plan is an employee welfare benefit plan subject to ERISA. Plaintiff evidently means to invoke a regulation exempting certain benefits from ERISA coverage, but she cannot meet her burden in doing so.

Specifically, ERISA's "safe harbor" regulation provides that a group insurance program is not an "employee welfare benefit plan," but that regulation only applies if all four of the stated criteria are met. *See* 29 C.F.R. § 2510.3-1(j). That "[n]o contributions are made by an employer or employee organization" is just the first requirement, and all four requirements have not been met here. *See id*. (exempting from the definition of "employee welfare benefit plan" "a group or group-type insurance program offered by an insurer to employees or members of an employee organization," if it satisfies *all* of the following four requirements: (1) the employer or employee organization cannot contribute to the program; (2) employee or member participation must be completely voluntary; (3) the employer or employee organization may not endorse the program and its sole functions must be limited to (i) permitting the insurer to publicize the program and (ii) collecting premiums through payroll deduction and remitting them to the insurer; and (4) the employer or employee organization may not receive any consideration for its limited administrative involvement).

The Ninth Circuit has "uniformly adopted the position that a group insurance plan cannot be excluded from ERISA coverage when the [party] fails to satisfy any one of the four requirements of [29 C.F.R. § 2510.3-1(j)]." *Stuart*, 217 F.3d at 1153; *Fiscu v. UKG Inc.*, No. 3:23-CV-01240-AN, 2024 WL 2153537, at *2 (D. Or. May 13, 2024) (recognizing plan must meet all four safe harbor requirements to be exempt from ERISA); *see also Sgro*, 532 F.3d at 942 (affirming dismissal of state law claims as preempted by ERISA, where plaintiff failed to allege that disability benefits plan at issue met all four requirements of safe harbor regulation).

The booklet-certificate attached to the Complaint, as well as the Wrap Plan, SPD and Group Contract, establish that the Plan does not fall under the "safe harbor" provided by 29 C.F.R. § 2510.3-1(j). These documents establish that the NEA served as the Plan Sponsor, Plan Administrator, and agent for service of legal process. *See* ECF No. 20-1 at 27-28; *see generally* Testerman Decl. Ex. A.1, Wrap Plan); *see id.* at § 9.1 (duties of Plan Sponsor) and § 9.3 (duties of Plan Administrator). Therefore, the third requirement of the safe harbor exemption is not met because the NEA performed functions beyond merely permitting Prudential to publicize the program and collecting and remitting premiums. *See Kanne*, 867 F.2d at 493 (finding third safe harbor requirement not satisfied where employer serves as plan administrator). Moreover, the booklet-certificate, the Wrap Plan, and the SPD expressly reference ERISA, indicating the NEA's intent to create an ERISA plan. *See* ECF No. 20-1 at 27-30; Testerman Dec. Exs. A.1-A.2; *Stuart*, 217 F.3d at 1154 (observing group insurance policy "tended to prove that [the employer] and [the insurer] intended to create an ERISA plan because the Policy specifically refers to ERISA."); *Kanne*, 867 F.2d at 493 (recognizing plan brochure that described plan as ERISA plan demonstrated intent to create ERISA plan, and "there need not be employer contributions …to bring the plan within ERISA.").

In short, there can be no doubt that the Plan is ERISA-governed.

3. Plaintiff's state law claims are preempted by ERISA.

Because the Plan is governed by ERISA, the Court must dismiss the First, Second and Third Causes of Action in the First Amended Complaint as preempted by ERISA.

ERISA explicitly "supersede(s) any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA's preemption provision is "virtually unique." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 n. 6 (1983). "State laws" include "all laws, decisions, rules, regulations, or other State

action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). ERISA's preemption provision is not limited to "state laws dealing with the subject matter covered by ERISA – reporting, disclosure, fiduciary responsibility and the like." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 98 (1983). ERISA preempts a state law to the extent it "relates to" an ERISA plan – i.e., "has a connection with or reference to" such plan. 29 U.S.C. § 1144(a); *Shaw*, 463 U.S. at 96-97.

In addition, ERISA provides a civil enforcement mechanism that is the "exclusive federal cause of action for resolution of such [recovery of benefits] disputes." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). The United States Supreme Court has recognized that ERISA's exclusive civil enforcement mechanism would be undermined if ERISA-plan beneficiaries "were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50-52 (1987); *see also Metro. Life Ins. Co. v. Gen. Motors Corp.*, 481 U.S. 58, 64-5 (1987). Thus, to effectuate Congress' intent that ERISA occupy the field of benefit plan regulation, the Supreme Court has recognized that ERISA preempts all state laws, including decisional law relating to employee benefit plans, whether consistent or inconsistent with specific provisions of ERISA. *Shaw*, 463 U.S. at 98-99. To hold otherwise, the Court has said, would undermine a primary purpose of the statute, *i.e.*, to ensure that regulation of employee benefit plans is exclusively a federal concern. *Metro. Life Ins, Co. v. Mass.*, 471 U.S. 724, 740 (1985). *See also Mackey v. Lanier Collections Agency & Serv., Inc.*, 486 U.S. 825 (1988).

Indeed, absent preemption, nationwide unions – such as the NEA – would face the "difficult," burdensome, and costly challenge of complying with "differing regulatory regimes in differing States," instead of an "efficient" and nationwide "uniform administrative scheme," with "a set of standard procedures to guide processing of claims and disbursement of benefits." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987). To this end, the Supreme Court has repeatedly

reaffirmed that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-145 (1990).

Based on ERISA's broad preemption clause, the Ninth Circuit has concluded that state law claims arising from the denial of benefits under an employee benefit plan are well within the scope of ERISA preemption. *See, e.g.*, *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597, 602 (9th Cir. 2024) "ERISA preempts state law claims that provide alternative enforcement mechanisms for ERISA plan obligations"); *Meyer*, 840 F. App'x at 176 (in medical benefits case, holding that claims for breach of contract, fraud, and violation of Montana's Unfair Trade Practices Act were preempted by ERISA because they "exclusively focuse[d] on a claim-payment dispute covered by ERISA's comprehensive scheme."); *Wise*, 600 F.3d at 1190 (holding that, where the existence of an ERISA plan "is a critical factor in establishing liability under a state cause of action, the state law claim is preempted"; dismissing plaintiff's claims of fraud, negligence, and misrepresentation as preempted because they "all depend on the existence of an ERISA-covered plan to demonstrate that [plaintiff] suffered damages: the loss of insurance benefits."); *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007 (9th Cir. 1998) ("ERISA preempts state common law tort and contract causes of action asserting improper processing of a claim for benefits under an insured employee benefit plan.").

Here, Plaintiff brings claims for breach of contract, breach of the duty of good faith and fair dealing, and negligence per se arising out of Prudential's denial of benefits under an ERISA-governed plan. Those are precisely the kinds of claims that ERISA preempts. *See Wise*, 600 F.3d at 1190 (negligence claim was preempted by ERISA); *Hower*, 36 F. at 252 (affirming dismissal of

state law claim for breach of the implied covenant of good faith and fair dealing as preempted by ERISA); *Bast*, 150 F.3d at 1007 (9th Cir. 1998) (finding that ERISA preempted state common law tort and contract causes of action); *Tingey v. Pixley-Richards W., Inc.*, 953 F.2d 1124, 1133 (9th Cir. 1992) (holding that claims for breach of contract and breach of duty of good faith and fair dealing under Arizona law were preempted by ERISA); *Fiscu*, 2024 WL 2153537, at *4-5 (breach of contract and negligence claims under Oregon law were preempted by ERISA); *Damiano*, 2026 WL 539619, at *4 (dismissing claims for fraud and negligent misrepresentation under California law as preempted by ERISA); *Heintzman*, 2026 WL 621428, at *9-10 (dismissing state law claims for insurance bad faith, fraud, misrepresentation, defamation, and violations of the Arizona Consumer Fraud Act as preempted by ERISA). *See also Meyer*, 840 F. App'x at 175–76 (affirming dismissal of breach of contract claim and claim under Montana's Unfair Trade Practices Act as preempted by ERISA); *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (claim against disability insurer under Montana's Unfair Trade Practices Act seeking compensatory and punitive damages related to claim processing was preempted by ERISA).

4. <u>Dismissal at the outset accords with the important public policies behind ERISA.</u>

For the reasons discussed above, ERISA clearly preempts the state law claims in the FAC. But, for purposes of context, it is important to explain *why* preemption is so critical here.

Put simply, Plaintiff's common law claims necessarily operate as an attack on the NEA Plan's status as ERISA-governed. As a result, Plaintiff's claims threaten the rights of 380,000 member families, who benefit from ERISA's protections.

One of the principal goals of ERISA is to enable employers and employee organizations to establish a "uniform administrative scheme" so that plans are not subject to different legal obligations in different States. *Fort Halifax Packing Co.*, 482 U.S. at 9. ERISA represents a

carefully constructed Congressional compromise, designed to "provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). That means, among other things, that courts will enforce plan provisions that afford fiduciaries discretion in making decisions, that ERISA cases generally confine review to the administrative record and allow only limited discovery in certain cases, and that jury trials are unavailable. *See generally Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 673 (9th Cir. 2011) (describing the abuse of discretion standard of review); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006) (discussing general limitation of court's review to the administrative record, and limits on discovery in ERISA cases); *Thomas v. Oregon Fruit Prods. Co.*, 228 F.3d 991, 995-997 (9th Cir. 2000) (holding remedies available under ERISA are equitable in nature and the Seventh Amendment does not require that a jury trial).

This enables ERISA claims, many of which involve small amounts of money, to be decided *fast*, and usually without burdening either side with significant discovery or other litigation costs. At the same time, ERISA affords plan participants (*i.e.*, insureds) numerous rights not typically available under common law contract, including the ability to have the Court, in its discretion, award attorneys' fees, *see* 29 U.S.C. § 1132(g)(1). Further, ERISA imposes extensive reporting, disclosure, and recordkeeping obligations on ERISA plans and their administrators. 29 U.S.C. §§ 1031-32; *see Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 322-23 (2016) (recognizing that ERISA's reporting and disclosure obligations "are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA"). ERISA also imposes extensive fiduciary obligations on those charged with managing ERISA plans. 29 U.S.C. §§ 1101-14; *see, e.g., Hughes v. Nw. Univ.*, 595 U.S. 170, 175-77 (2022).

All of the above is jeopardized if the Court concludes that the Plan is non-ERISA – and not just for Plaintiff, but for the NEA, and for the 380,000 NEA member families who depend upon the Plan for insurance coverage.

More to the point, all of the underlying contracts – including the insurance coverage selected by members for themselves and their families, Prudential's agreement to insure the Plan, and NEA's agreement to purchase this insurance, were predicated on the ERISA-governed status of the Plan. A determination that the Plan is *really* non-ERISA—contrary to the uniform conclusion of courts across the country—would not just take away rights, it would effectively rewrite insurance contracts covering hundreds of thousands of people, imposing substantially different obligations on the associated parties.

While Plaintiff may wish that her ex-husband's coverage was non-ERISA, Plaintiff has no authority to rewrite contracts, or to threaten the rights of 380,000 other plan participants. Plaintiff's state law claims must be dismissed for this reason as well.

**C. The Court should dismiss Plaintiff's state law claims with prejudice.**

The Court should deny leave to amend. Claims are properly dismissed without leave to amend when amendment would be futile. *Torres v. San Francisco Hum. Servs. Agency*, No. 19-17583, 2021 WL 5985560, at *2 (9th Cir. Dec. 17, 2021), citing *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1041 (9th Cir. 2011); *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the Court demonstrate that further amendment would be futile."). Here, amendment would be futile. Plaintiff's state law claims are completely preempted by ERISA. *See* Part II.B, *supra*. Therefore, Plaintiff's only avenue to seek relief is through her ERISA claim

(Fourth Cause of Action). The Court should dismiss the First, Second, and Third Causes of Action with prejudice.

## III. CONCLUSION

For the reasons set forth in this Motion and Memorandum of Law, the Court should grant Prudential's Partial Motion to Dismiss Plaintiff's First Amended Complaint with prejudice.

Dated this 6th day of August, 2026.

Respectfully submitted,

SEYFARTH SHAW LLP

*s/ Shelley R. Hebert*

Ian H. Morrison (admitted *pro hac vice*)
imorrison@seyfarth.com
Shelley R. Hebert (admitted *pro hac vice*)
shebert@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, IL 60606
Telephone: 312-460-5000
Facsimile: 312-460-7000

Andrew R. Escobar (OSB No. 106671)
SEYFARTH SHAW LLP
999 Third Avenue, Suite 4700
Seattle, Washington 98104-4041
Telephone: (206) 946-4968
Email: aescobar@seyfarth.com

*Attorneys for Defendant The Prudential Insurance Company of America*

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2026, a true and correct copy of the foregoing DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record.

Jeremy L. Bordelon, OSB No. 160789
jeremy@evergreendisability.com
EVERGREEN DISABILITY LAW
465 Northeast 181st Avenue, No. 500
Portland, Oregon 97230
Telephone: (503) 888-9331
Facsimile: (503) 928-3533
Attorney for Plaintiff

Glenn Kantor, *Pro Hac Vice*
Email: gkantor@kantorlaw.net
KANTOR & KANTOR, LLP
9301 Corbin Ave., Suite 1400
Northridge, California 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

*/s/Shelley R. Hebert*
Shelley R. Hebert